UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
JEANENE MAE DAVIS,

                           Plaintiff,                         **MEMORANDUM AND ORDER**
                                                                                            19-CV-2561 (RRM)
        -against-

KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL SECURITY,[1]

                           Defendant.
----------------------------------------------------------x
ROSLYNN R. MAUSKOPF, United States District Judge.

      The Law Offices of Charles E. Binder and Harry J. Binder, LLP ("Binder"), which successfully represented plaintiff Jeanene Mae Davis in her Social Security appeal before this Court, now moves pursuant to 42 US.C. § 406(b) for an order awarding attorney's fees in the amount of $11,038.90.  Although the Court is troubled by inaccuracies contained in Binder's motion papers, the Court nonetheless grants Binder's motion for the reasons set forth below.

## BACKGROUND

      In December 2015, plaintiff filed applications for Social Security Disability benefits, Disabled Widows Benefits, and Supplemental Security Income.  Her claims were initially denied and she requested a hearing before an Administrative Law Judge ("ALJ").  That hearing was held before ALJ Sommattie Ramrup who, in a decision dated July 25, 2018, found plaintiff not disabled.  Plaintiff then requested that the Appeals Council review the ALJ's decision, but that request was denied in a notice dated March 22, 2019.

---

[1] The complaint in this action named Nancy A. Berryhill, who was then Acting Commissioner of Social Security, as defendant.  Federal Rule of Civil Procedure 25(d)(1) provides that "when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending[, … the] officer's successor is automatically substituted as a party."  Since Kilolo Kijakazi is now Acting Commissioner, the Court has substituted her as defendant.

On April 18, 2019, plaintiff retained Binder to appeal the denial of Social Security benefits to this Court and to represent her in subsequent proceedings if the Court remanded the matter. Plaintiff signed a contingent-fee agreement (the "Retainer Agreement"), which provided that plaintiff would owe no fees if "the reviewing federal court denies benefits." (Retainer Agreement (Doc. No. 17-3) at ¶ 2.) That agreement further provided that if the appeal was successful and plaintiff was awarded past-due benefits by a federal court, Binder would "receive up to twenty-five percent (25%) of any past due benefits … pursuant to 42 U.S.C. § 406," subject to approval of the court. (*Id.* at ¶ 1.) However, it also stated that if a federal court remanded plaintiff's case to the SSA and plaintiff was awarded past-due benefits by "the Appeals Council or by an Administrative Law Judge following additional proceedings, the law firm may apply for fees under 42 U.S.C. § 406(a) and/or § 406(b)." (*Id.* at ¶ 3.) The Retainer Agreement provided that the "combined fees" would not "exceed 25% of any retroactive benefits awarded." (*Id.* at ¶ 8.)

On May 1, 2019, Binder commenced this action on behalf of plaintiff. (Complaint (Doc. No. 1).) On October 3, 2019, the parties filed a joint proposed briefing schedule that required, among other things, that plaintiff serve a motion for judgment on the pleadings on or before November 29, 2019, and that defendant serve a cross-motion on or before January 28, 2020. (Doc. No. 9.) The Court approved that schedule in an electronic order dated November 4, 2019.

On January 28, 2020, after requesting and obtaining a two-month extension of the time to file plaintiff's motion, Binder served its motion on defendant. (Letter (Doc. No. 11).) Defendant never served or filed a cross-motion. Instead, on March 30, 2020, defendant filed a stipulation and proposed order, agreeing to reverse the Commissioner's final decision pursuant to the fourth sentence of 42 U.S.C. § 405(g) and to remand the case for further administrative proceedings.

(Doc. No. 12-1.) On March 31, 2020, the Court signed the proposed order, (Doc. No. 13), and entered judgment accordingly, (Doc. No. 14).

On April 16, 2020, the parties filed another stipulation and proposed order in which defendant agreed to pay plaintiff $6,837.24 in attorney's fees and $400.00 in court costs pursuant to the Equal Access to Justice Act ("EAJA"). (Doc. No. 15-1.) The stipulation further provided that the fees would be paid directly to plaintiff's attorney if plaintiff had agreed to assign her rights to EAJA fees to her attorney and if plaintiff owed no debt that was subject to offset under the Treasury Offset Program. (*Id.*) Since the Retainer Agreement provided for the assignment of EAJA fees, (Retainer Agreement at ¶ 4), and since plaintiff owed no debt subject to offset, the SSA paid the attorney's fees directly to Binder after the Court "so ordered" the stipulation on April 22, 2020.

### Administrative Proceedings on Remand

According to an affirmation executed by Charles E. Binder (the "Binder Affirmation"), the Appeals Council remanded plaintiff's claim for a new hearing and decision by an ALJ. (Binder Aff. (Doc. No. 17-2) at ¶ 6.) That hearing was held before ALJ Lucian A. Vecchio on November 10, 2020. (*Id.*) Twenty days later, the ALJ issued his decision, finding that plaintiff had been disabled since March 1, 2016. (*Id.*)

The Binder Affirmation alleges that the Notice of Award ("NOA") was not issued until May 5, 2021, more than five months after ALJ Vecchio issued his decision. (*Id.* at ¶ 12.) However, the document that the Binder Affirmation characterizes as the NOA – Doc. No. 17-3 – is actually a letter addressed to Charles E. Binder inquiring whether counsel has yet petitioned the Court for fee or whether counsel intends to waive the fee. This letter indicates that the SSA is "withholding $17,038.90 which represents 25 percent of the past due benefits … in

3

anticipation of direct payment of an authorized attorney's fee," but notes that the SSA has "already released $6,000" to Binder. (SSA Letter (Doc. No. 17-3) at 1.) The letter implies that Binder had already received the NOA and had the opportunity to file a fee petition, stating: "If the court or SSA has authorized you to receive a fee in this case, please send us a copy of that authorization." (*Id.*)

The Instant Motion

On May 20, 2021 – 15 days after receiving the SSA's letter – Binder moved for $11,038.90 in attorney's fees pursuant to 42 U.S.C. § 406(b). In support of that motion, Binder submitted a five-page memorandum of law ("Binder's Memo") and the Binder Affirmation. The affirmation attaches three exhibits: the Retainer Agreement; the SSA's May 5, 2021, letter; and time records. Those records indicate that two Binder attorneys spent a total of 32.7 hours representing plaintiff before this Court. Daniel S. Jones spent 29.3 hours on the case, 28.4 hours of which was spent drafting and revising the motion for judgment on the pleadings. Charles E. Binder spent 3.4 hours on the case, including 1.9 hours reviewing Jones' draft.

The Binder Affirmation details the two attorney's extensive experience representing claimants in Social Security cases. Mr. Jones has worked exclusively on social security appeals in federal courts for the past decade, handling over a thousand cases during that period. (Binder Aff. at ¶ 9.) Mr. Binder, who has served as a president of the New York Social Security Bar Association and an officer of the National Organization of Social Security Claimant's Representatives ("NOSSCR"), has handled thousands of administrative hearings and federal appeals. (*Id.* at ¶ 11.)

Binder's Memo contains some inaccuracies. First, it inaccurately claims that the Retainer Agreement in this case "set the contingency rate at 25 percent." (Binder's Memo (Doc. No. 17-

4

4) at 1–2.) In fact, that agreement provided that Binder would receive "up to … 25% … of any past due benefits" if such benefits were awarded by a federal court, and "may apply for fees under 42 U.S.C. § 406(a) and/or § 406(b)" if such benefits were awarded by "an Administrative Law Judge following additional proceedings." However, Binder is not seeking to recover the entire 25% and correctly notes that the $11,038.90 it does seek to recover would pay the firm an average of $337.58 for each of the 32.7 hours worked on this case. (*Id.* at 2.)

Second, Binder's Memo asserts that the NOA was mailed on May 5, 2021. (*Id.* at 4.) As discussed above, the May 5, 2021, document was not the NOA, but a letter inquiring whether Binder had petitioned the Court for a fee or intended to waive it. In her response (the "Response"), defendant – who "has no direct financial stake in … the § 406(b) question [but] … plays a part … resembling that of a trustee for the claimants," *Gisbrecht v. Barnhart*, 535 U.S. 789, 798 n.6. (2002) – does not question the accuracy of Binder's assertion or contest the timeliness of the instant motion. Rather, the Response cites the Binder Affirmation itself as authority for the proposition that "by Notice dated May 5, 2020, the … SSA … advised Plaintiff that it was withholding $17,038.90 from past-due benefits for attorney fee claims." (Response (Doc. No. 18) at 1.)

Third, Binder's Memo implies that the law firm could seek to recover the entire $17,038.90 pursuant to 42 U.S.C. § 406(b), despite having already recovered $6,000 pursuant to 42 U.S.C. § 406(a). Binder correctly cites *Culbertson v. Berryhill*, 139 S. Ct. 517 (2019), for the proposition that, although § 406(b) caps fees at 25% of past-due benefits, the 25% cap does not apply to the aggregate fees requested under both 42 U.S.C. §§ 406(a) and 406(b). (Binder's Memo at 4.) However, the Memo makes no mention of that portion of the Retainer Agreement that sets a 25% limit on the "combined fees."

5

The Response does not concede that the $11,038.90 sought by Binder constitutes a reasonable fee. Yet, the Response confirms that this request "amounts to an effective hourly rate of $337.58," and states that defendant does not "believe that such an award would constitute a windfall." (Response at 2.) In addition, the Response notes that the "Commissioner is unaware of any evidence of fraud or overreaching in the making of" the Retainer Agreement. (*Id.*)

## STANDARD OF REVIEW

The Social Security Act "allows courts to grant reasonable attorney's fees for successful representation in Social Security actions." *Fields v. Kijakazi*, 24 F.4th 845, 852 (2d Cir. 2022). Specifically, the Act provides:

> Whenever a court renders a judgment favorable to a claimant … who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment ….

42 U.S.C. § 406(b)(1)(A).

"Section 406(b) does not prohibit contingent fee agreements." *Wells v. Sullivan*, 907 F.2d 367, 369 (2d Cir. 1990). Indeed, the Supreme Court has noted that "the marketplace for Social Security representation operates largely on a contingency fee basis," *Gisbrecht*, 535 U.S. at 804, and that attorneys and clients "characteristically" enter into contingent-fee agreements "specifying that the fee will be 25 percent of any past-due benefits to which the claimant becomes entitled," *id.* at 803. However, while § 406(b) allows contingency agreements, it "gives no guidance as to how a court should treat them in determining a 'reasonable fee.'" *Fields*, 24 F.4th at 852 (quoting *Wells*, 907 F.2d at 369).

The Second Circuit and the Supreme Court have filled that void by "set[ting] out guidelines for courts conducting this reasonableness analysis." *Id.* at 849. Under these

guidelines, courts "approach fee determinations by looking first to the contingent-fee agreement, then testing it for reasonableness." *Gisbrecht*, 535 U.S. at 808; *see Wells*, 907 F.2d at 371. The Second Circuit has "rejected reliance on 'the traditional lodestar method'" in determining whether an amount is reasonable. *Fields*, 24 F.4th at 853 (quoting *Wells*, 907 F.2d at 371. "[B]ecause a successful social security claimant evaluates and pays his own attorney, … the best indicator of the "reasonableness" of a contingency fee in a social security case is the contingency percentage actually negotiated between the attorney and client, not an hourly rate determined under lodestar calculations." *Wells*, 907 F.2d at 371. However, a court "ought not blindly approve every fee request made pursuant to a contingent agreement." *Id.* at 372.

Both the Second Circuit and Supreme Court have listed several factors that a court should consider in evaluating the reasonableness of the contingency agreement. The Second Circuit has "instructed courts to 'determine whether the contingency percentage is within the 25% cap' and then to consider 'whether there has been fraud or overreaching in making the agreement, and' … 'whether the requested amount is so large as to be a windfall to the attorney.'" *Fields*, 24 F.4th at 853 (quoting *Wells*, 907 F.2d at 372). In *Gisbrecht*, the Supreme Court provided examples of factors a court might consider in conducting this reasonableness analysis:

> First, the [Supreme] Court pointed to the character of the representation and the results the representative achieved, noting that courts may reduce the requested fees where the representation is substandard. Second, the Court indicated that a reduction is appropriate where the attorney is responsible for delay, lest the attorney profit from the accumulation of benefits during a delay that the attorney caused. And third, a reduction may be in order if the benefits are large in comparison to the amount of time counsel spent on the case—the so-called 'windfall' factor ….

*Fields*, 24 F.4th at 853 (internal quotations and citations omitted).

**DISCUSSION**

Timeliness

Parties who secure sentence four remand judgments in the district court have to "file § 406(b) motions for attorney's fees within the … period specified in Rule 54(d)(2)(B)" of the Federal Rules of Civil Procedure. *Sinkler v. Berryhill*, 932 F.3d 83, 89 (2d Cir. 2019). That rule provides that "the motion must … be filed no later than 14 days after the entry of judgment," "[u]nless a statute or a court order provides otherwise." Fed. R. Civ. P. 54(d)(2)(B). But the 14-day deadline "poses 'a practical problem' in the context of § 406(b) motions [because] … 'the Commissioner typically does not calculate the amount of past-due benefits until months after the district court remands, and § 406(b) caps attorney's fees at 25% of the benefits award.'" *Williams v. Comm'r of Soc. Sec.*, No. 18-CV-4734 (PKC), 2021 WL 4480536, at *2 (E.D.N.Y. Sept. 30, 2021) (quoting *Sinkler*, 932 F.3d at 87).

In *Sinkler*, the Second Circuit crafted a solution to this "practical problem." Since the 14-day "deadline of Rule 54 is not … jurisdictional," *Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 227 (2d Cir. 2004), it "is subject to equitable tolling when § 406(b) motions must await the SSA Commissioner's calculation of benefits." *Sinkler*, 932 F.3d at 91. The *Sinkler* Court held that the 14-day period is equitably tolled "until a benefits calculation is made on remand and notice thereof received by the parties." *Id.* at 89.

Despite the apparent clarity of this holding, other portions of the *Sinkler* opinion create ambiguity as to precisely when the equitable tolling period ends and the 14-day filing period begins to run. As Judge Chen recently observed:

> When summarizing its holding, the Second Circuit explained that the tolling period ends, and the filing period starts to run, when "the claimant receives notice" of the benefits award. *Id.* at 85, 91. But when discussing its reasoning, the Second Circuit indicated

8

> that the relevant date is "when counsel receives notice of the benefit award." *Id.* at 88 (emphasis added).

*Williams*, 2021 WL 4480536, at *2. Judge Chen and several other district judges in this circuit have reasoned "that starting the 14-day period when counsel receives notice of the benefit award is more consistent with *Sinkler*'s logic, because until counsel receives notice of the award, 'the amount of the award remains "as-yet-unknown" to the relevant party filing the § 406(b) motion.'" *Id.*; *see also Phillip v. Comm'r of Soc. Sec.*, No. 18-CV-5005 (SN), 2021 WL 681289, at *2 (S.D.N.Y. Feb. 22, 2021); *Boylan v. Saul*, No. 15-CV-6730 (LTS) (JCF), 2020 WL 5235755, at *2 n. 3 (S.D.N.Y. Sept. 2, 2020).

In this case, Binder represents that the NOA was mailed on May 5, 2021, and that its motion is, therefore, timely. (Binder's Memo at 4.) Although the instant motion was not filed until May 20, 2021 – 15 days after May 5 – the presumption that "a party receives communications three days after mailing" applies in this context. *Sinkler*, 932 F.3d at 89 n.5, Accordingly, Binder's motion would be timely if this representation were accurate.

However, the document mailed by the SSA on May 5, 2021 – and attached to the Binder Affirmation as Exhibit C – is not the NOA. In an NOA, "the Commissioner calculates the past-due benefits to which the claimant is entitled and the corresponding 25 percent of past-due benefits to be withheld pending the approval of any attorneys' fees sought." *Garland v. Astrue*, 492 F. Supp. 2d 216, 220 (E.D.N.Y. 2007); *see also* SSA's Program Operations Manual System ("POMS") NL 00610.010(B) (detailing the content of the NOA). In contrast, the May 5, 2021, document implies that the SSA previously provided Binder with those calculations by inquiring whether Binder has yet petitioned the Court for fees.

It also appears likely that Binder received notice of the past-due benefit calculations well prior to May 5, 2021. The letter noted that the SSA had already released $6,000 of the

9

$17,038.90 being withheld for attorney's fees. This implies that Binder had filed a petition pursuant to 42 U.S.C. § 406(a), which, in 2021, limited fees to the lesser of $6,000 or 25% of past-due benefits. 42 U.S.C. § 406(a)(2)(A)(ii); *see* "Maximum Dollar Limit in the Fee Agreement Process," 74 Fed. Reg. 6080-02 (Feb. 4, 2009).[2] In order to file its §406(a) application, Binder would have had to know the amount of the past-due benefits.

Notwithstanding this evidence suggesting that the instant motion is untimely, defendant has not argued that the instant motion is time-barred. Courts have "judicial discretion to deny fee applications as untimely even if the Commissioner fails to object on that ground," *Garland*, 492 F. Supp. 2d at 222, and some have raised the timeliness issue sua sponte. *See id.* (denying § 406(b) motion as untimely even though Commissioner and plaintiff did not object and recognizing the need for courts to exercise "independent judgment" and "judicial discretion" to reject fee applications as untimely even absent an objection); *see also Fuller v. Colvin*, No. 11-CV-117-BL, 2016 WL 3221851, at *3 (N.D. Tex. June 8, 2016) (denying § 406(b) motion as untimely where defendant raised the issue in response to the initial § 406(b) motion but filed no response to the amended motion); *Rice v. Astrue*, 831 F. Supp. 2d 971, 977, 982 (N.D. Tex. 2011) (sua sponte raising issue of the timeliness of § 406(b) fee petition and finding request was untimely). Other courts "have determined that it is not necessary to examine whether a particular fee application was submitted within a reasonable time-frame when the Commissioner did not object to the award on that basis." *Garland*, 492 F. Supp. 2d at 222. And "the timeliness (or more often, the lack thereof) of a Rule 406(b) motion [is] … frequently overlooked." *Short v. Comm'r of Soc. Sec.*, No. 12-CV-574, 2015 WL 4465189, at *5 (S.D. Ohio July 21, 2015).

---

[2] Pursuant to §406(a)(2)(A), which provides that the "Commissioner of Social Security may from time to time increase the dollar amount" that can be paid to representatives in administrative proceedings, the Commissioner increased the maximum fee to $7,200 effective November 30, 2022. "Maximum Dollar Limit in the Fee Agreement Process," 87 Fed. Reg. 39157-01 (June 30, 2022).

10

In determining whether to raise the timeliness issue, "the court attempts to strike an appropriate balance between the interests of … Binder and those of [the] client." *Garland*, 492 F. Supp. 2d at 222–23.  Raising the issue sua sponte "could result in denying a successful attorney a fee that is otherwise hard-earned and well-deserved." *Short*, 2015 WL 4465189, at *5.  Conversely, "[r]equiring attorneys to file under 406(b) in a reasonably timely fashion … ensure[s] that money rightfully due the plaintiff is not needlessly withheld for an excessive amount of time." *Id.* at 223.

In this case, the Court, in its discretion, declines to raise the timeliness issue sua sponte.  Social Security plaintiff's attorneys, like Binder, "make a vital contribution to advancing the interests of a vulnerable group by assisting their clients to effectively advocate their entitlement to benefits." *Id.* at 223.  Considering that they already "bear a substantial risk of being uncompensated for the … work that they expend in … each contingency fee case that they take on," the Court is "reluctant to raise an issue sua sponte that could result in denying a successful attorney a fee." *Short*, 2015 WL 4465189, at *5.

Moreover, even assuming that the instant motion was untimely, the delay did not greatly prejudice plaintiff.  ALJ Vecchio issued his fully favorable decision on November 30, 2020.  Binder filed the instant motion on May 20, 2021 – less than six month later.  Accordingly, the delay attributable to Binder's action amounted to a few months at most.  And since Binder is entitled to the $11,038.90 of past-due benefits that is still held by the Commissioner, the delay only affected the return of the $6,837.24 in EAJA fees.

<u>The Reasonable Analysis</u>

The Court next analyzes the question of whether the fees requested by Binder are reasonable, using the factors discussed in the "Standard of Review" section, above.  Most of

11

these factors do not require lengthy discussion. First, although there is no contingent fee specified in the Retainer Agreement, that agreement makes it clear that Binder will not seek more than 25% of the past-due benefits. The Retainer Agreement permits Binder to "apply for fees under 42 U.S.C. § 406(a) and/or § 406(b)" in the event that the case is remanded to the SSA for further administrative proceedings and those proceedings result in an award of past-due benefits by the Appeals Council and/or an Administrative Law Judge, (Retainer Agreement at ¶ 3), but specifically provides that the "combined fees" will not "exceed 25% of any retroactive benefits awarded," (*id.* at ¶ 8.)

Second, there is no evidence of fraud or overreaching in the making of the Retainer Agreement. The Response expressly states that "[t]he Commissioner is unaware of any evidence of fraud or overreaching in the making of the agreement." (Response at 2.)

Third, Binder's representation was not substandard. Binder not only succeeded in convincing this Court to remand plaintiff's case for further proceedings but ultimately won at the agency level, convincing ALJ Lucian A. Vecchio that plaintiff had been disabled since March 1, 2016. As a result of Binder's efforts, plaintiff was awarded over $68,000 in past-due benefits and is presumably still receiving Social Security benefits.

Fourth, Binder obtained these results without inordinate delay. Binder commenced this action within two weeks of being retained. The action was resolved less than 11 months later, after plaintiff's motion for judgment on the pleadings persuaded defendant to abandon its intentions to cross-move and to stipulate to the remand of this matter.

<u>The "Windfall" Factor</u>

The so-called "windfall factor" requires a lengthier discussion. "In determining whether there is a windfall that renders a § 406(b) fee in a particular case unreasonable, courts must

consider more than the de facto hourly rate." *Fields*, 24 F.4th at 854. The Second Circuit has identified four "factors to be considered" in making this determination. First, courts should consider "the ability and expertise of the lawyers and whether they were particularly efficient, accomplishing in a relatively short amount of time what less specialized or less well-trained lawyers might take far longer to do." *Id.* Second, "courts should consider the nature and length of the professional relationship with the claimant – including any representation at the agency level." *Id.* at 855. Although § 406(b) fees compensate counsel only for court-related work, "consideration of 'the time spent and work performed by counsel on the case when it was pending at the agency level' can inform a district court's understanding of 'the overall complexity of the case, the lawyering skills necessary to handle it effectively, the risks involved, and the significance of the result achieved in district court.'" *Id.* (quoting *Mudd v. Barnhart*, 418 F.3d 424, 428 (4th Cir. 2005)).

"A third factor to consider is the satisfaction of the disabled claimant." *Id.* "Finally, a fourth important factor to consider is how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result." *Id.* at 855. Since contingency-fee arrangements make "payment for an attorney in a social security case … uncertain, … any reasonable fee award must take account of that risk." *Id.* at 855–56 (quoting *Wells*, 907 F.2d at 371).

After reviewing these factors, the Court finds that the $11,038.90 requested by Binder would not constitute a windfall. First, the law firm was particularly efficient. The Second Circuit acknowledged in a recent case that "Binder's ability and expertise allowed it to accomplish in just 25.8 hours what other lawyers might reasonably have taken twice as much time to do." *Fields*, 24 F.4th at 854. Here, it took Binder slightly longer to achieve favorable

13

results before this Court – a total of 32.7 hours – but that was still a shorter time than other, less experienced firms might have reasonably taken to achieve the same results.  *See id.*

Second, the Court notes that Binder had a long and successful professional relationship with plaintiff, some of which occurred at the agency level after the Court remanded this matter. Although judgment was entered in this case within 11 months of its commencement, Binder spent another seven months litigating at the agency level before ALJ Vecchio issued his favorable decision.  This suggests that the case was indeed complex, required considerable effort and skill to obtain a favorable result, and involved a substantial risk that Binder might fail and a receive no compensation at all for their efforts.  It was not a case in which the lawyer engaged on a contingency-fee basis succeeds immediately and with minimal effort – the sort of case in which there was "very little risk of nonrecovery."  *See* Fields, 24 F.4th at 856.

With respect to the third factor, Binder's Memo does not divulge whether plaintiff was satisfied with the law firm's efforts.  However, the Court notes that Binder obtained a favorable result in a timely manner – a result that should satisfy most reasonable clients.  Furthermore, the record contains no indication that plaintiff, who has a direct financial stake in the fee determination, objects to the fee award.

With respect to the fourth factor, the Court notes that when plaintiff retained Binder, success in this case was far from certain.  Plaintiff had already been litigating her Social Security claims for over three years and had been entirely unsuccessful at the agency level.  The Commissioner did not immediately stipulate to remand in this case, but did so only after receiving Binder's motion for judgment on the pleadings.  One must assume that the motion was persuasive and must conclude that it took skill and effort to achieve this favorable result.

14

Finally, the $11,038.90 fee sought by Binder amounts to an average of only $337.58 for each of the 32.7 hours Binder expended on this case.  That hourly rate was more than reasonable given the experience of the attorneys, both of whom had represented over a thousand Social Security claimants in federal court and/or at the agency level.  Furthermore, because the attorneys were handling the case on a contingency basis, there was no guarantee that they would receive even these relatively modest fees.  A $337.58 hourly rate, which would have been reasonable even in a non-contingency case, was clearly reasonable given the substantial risk that Binder might be unsuccessful and receive no compensation for its efforts.  *See Fields*, 24 F.4th at 854 ("even a relatively high hourly rate may be perfectly reasonable, and not a windfall, in the context of any given case.")

## CONCLUSION

For the reasons set forth above, the Court concludes that $11,038.90 constitutes a reasonable fee for Binder's representation of plaintiff before this Court.  Accordingly, the Court grants Binder's motion and awards the law firm $11,038.90 pursuant to 42 U.S.C. § 406(b).  However, since Binder has already received $6,837.24 in attorney's fees pursuant to the EAJA, the Court orders Binder to refund that amount to plaintiff.  *See Ward v. Kijakazi*, 20-CV-5412 (PGG)(JLC), 2023 WL 329210, at *2 (S.D.N.Y. Jan. 20, 2023) (when an attorney receives fee awards under both the EAJA and § 406(b) for the same work, he must refund to the claimant the amount of the smaller fee." (quoting *Gisbrecht*, 535 U.S. at 796.)

SO ORDERED.

Dated:  Brooklyn, New York
        March 30, 2023

/s/ *Roslynn R. Mauskopf*
ROSLYNN R. MAUSKOPF
United States District Judge